# EXHIBIT A

FILED
THIRD DISTRICT COURT

2012 OCT 22 PM 1:31

WEST JORDAN DEP'T.

Jared L. Anderson, #8140
Morgan Fife, #11278
**ROBINSON, SEILER & ANDERSON, LC**
2500 North University Ave.
PO Box 1266
Provo, Utah 84603-1266
Telephone: (801) 375-1920
Facsimile: (801) 377-9405
Email: jla@rsalawyers.com

Juan E. Monteverde
FARUQI & FARUQI, LLP
369 Lexington Ave., Tenth Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: jmonteverde@faruqilaw.com

*Attorneys for Plaintiff*

IN THE THIRD JUDICIAL DISTRICT COURT WEST JORDAN DEPARTMENT

SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| TREVOR BRAMWELL, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LIFEVANTAGE CORPORATION, DOUGLAS C. ROBINSON, ELWOOD H. SPEDDEN, MICHAEL A. BEINDORFF, DAVID W. BROWN, MIKE LU, DAVE S. MANOVICH, GARRY MAURO, JOE M. MCCORD, and GEORGE E. METZGER, <br><br> Defendants. | CLASS ACTION COMPLAINT AND JURY DEMAND <br><br><br> Civil No. 120413468 MI <br><br> Judge Su Chon |

1

Plaintiff Trevor Bramwell ("Plaintiff"), by his attorneys, alleges upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a shareholder class action brought by Plaintiff individually and on behalf of shareholders of LifeVantage Corporation ("LifeVantage" or the "Company") to enjoin the shareholder vote scheduled to be held at the annual meeting of LifeVantage shareholders on November 14, 2012 at 9815 S. Monroe Street, Suite 100, Sandy, Utah 84070(the "Shareholder Vote").

2. On October 9, 2012, LifeVantage filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission (the "SEC") in connection with the Shareholder Vote on four proposals.

3. In the Proxy, the board of directors of LifeVantage (the "Board") recommends that its shareholders vote in favor of Proposal 2 to approve the Company's executive compensation. However, the Proxy contains material disclosure violations regarding the reasons for, and effects of, Proposal 2 and why it is in the best interest of shareholders.

4. The Individual Defendants have violated fiduciary duties of care, loyalty, candor, and good faith owed to the public shareholders of LifeVantage, and have acted to potentially put their personal interests ahead of the interests of LifeVantage shareholders.

4.    The Individual Defendants have violated fiduciary duties of care, loyalty, candor, and good faith owed to the public shareholders of LifeVantage, and have acted to potentially put their personal interests ahead of the interests of LifeVantage shareholders.

5.    The dissemination of a materially misleading and incomplete Proxy in connection with the Shareholder Vote on Proposal 2, and the acts of the Individual Defendants, as more particularly alleged herein, constitute a breach of Defendants' fiduciary duties to Plaintiff and the Class, as well as a violation of applicable legal standards governing Defendants herein.   As a result, Plaintiff alleges that he, along with all other public shareholders of LifeVantage common stock, is entitled to enjoin the Shareholder Vote on Proposal 2, unless and until Defendants remedy their breaches of fiduciary duty.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over each defendant named herein.   LifeVantage maintains its principal executive offices in Salt Lake County, and all other defendants are officers and/or directors of LifeVantage with sufficient minimum contacts with Utah so as to render the exercise of jurisdiction by the courts of this State permissible under traditional notions of fair play and substantial justice.

8.    Venue is proper in the Court because one or more of the defendants either resides in or maintains its principal executive offices in Salt Lake County, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein of breaches of fiduciary duties occurred in Salt Lake County,

3

and defendants have received substantial compensation in Salt Lake County for doing business here and engaging in numerous activities that had an effect in this County.

## THE PARTIES

6.      Plaintiff Trevor Bramwell is, and at all times relevant hereto was, a shareholder of LifeVantage.

7.      Defendant LifeVantage is a Colorado corporation with its principal executive offices located at 9815 S. Monroe Street, Suite 100, Sandy, Utah 84070. LifeVantage engages in the identification, research, development, manufacture, and distribution of nutraceutical dietary supplements. LifeVantage is dedicated to visionary science that looks to transform wellness and anti-aging internally and externally with products that dramatically reduce oxidative stress at the cellular level. Shares of LifeVantage common stock trade on the NASDAQCM under the ticker symbol "LFVN."

8.      Defendant Douglas C. Robinson ("Robinson") has served as a director of the Company since 2010. Robinson has served as the Company's President and Chief Executive Officer ("CEO") since March 2011.

9.      Defendant Elwood H. Spedden ("Spedden") has served as a director of the Company since January 2012. Spedden serves as the Chairman of the Board and is also a member of the Compensation Committee.

10.     Defendant Michael A. Beindorff ("Beindorff") has served as a director of the Company since January 2012.

4

11.     Defendant David W. Brown ("Brown") has served as a director of the Company since 2008.

12.     Defendant Mike Lu ("Lu") has served as a director of the Company since 2010.

13.     Defendant Dave S. Manovich ("Manovich") has served as a director of the Company since January 2012.

14.     Defendant Garry Mauro ("Mauro") has served as a director of the Company since 2008.

15.     Defendant Joe M. McCord ("McCord") has served as a director of the Company since 2006. McCord has served as Chief Science Officer since April 2011.

16.     Defendant George E. Metzger ("Metzger") has served as a director of the Company since January 2012.

17.     Defendants Robinson, Spedden, Beindorff, Brown, Lu, Manovich, Mauro, McCord and Metzger are sometimes collectively referred to herein as the "Individual Defendants" or the "Board."

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action pursuant to Rule 23 of the Utah Rules of Civil Procedure on his own behalf and as a class action on behalf of all holders of LifeVantage common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

5

19.     This action is properly maintainable as a class action.   The Class is so numerous that joinder of all members is impracticable.   As of September 24, 2012, there were 113,368,210 shares of common stock outstanding, owned by thousands of shareholders located throughout the country

20.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.   The common questions include the following:

(a)     whether defendants have breached their fiduciary duties of loyalty, independence or due care, including candor, with respect to Plaintiff and the other members of the Class in connection with Proposal 2and the issuance of the Proxy;

(b)     whether the Individual Defendants are engaging in self-dealing in connection with Proposal 2;

(c)     whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of LifeVantage; and

(d)     whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

21.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

22.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

23.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

24.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

25.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**A.    Background**

26.    LifeVantage is a nutraceutical company that engages in the identification, research, development, manufacture, and distribution of nutraceutical dietary supplements.

27.    The Company is required, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, to seek an advisory vote from its shareholders regarding its executive compensation practices (a/k/a "Say-on-Pay").   Although the vote is advisory, shareholders are entitled to cast an informed vote in order to provide meaningful feedback to the Board regarding the Company's executive compensation practices, which they are unable to do without all material information.

**B.     The Materially Misleading and Incomplete Proxy**

28.     On October 9, 2012, LifeVantage filed the Proxy with the SEC, informing shareholders of the Shareholder Vote on a number of proposals, including Proposal 2.Proposal 2 of the Proxy seeks shareholder approval of LifeVantage's executive compensation. In particular, Proposal 2 in the Proxy states, in relevant part:

### PROPOSAL 2 – ADVISE AS TO OUR EXECUTIVE COMPENSATION

Pursuant to Section 14A of the Securities Act of 1934, as amended, we are requesting shareholder approval of a non-binding advisory resolution approving the compensation of our named executive officers as disclosed pursuant to the compensation disclosure rules of the Securities and Exchange Commission, including the compensation tables and narrative discussion in this proxy statement under the caption "Compensation Discussion and Analysis." Because we were a smaller reporting company until the most recent determination date of filer status, which was made as of June 30, 2012, we have historically not been required to and we did not submit to our shareholders an advisory vote on the compensation of our named executive officers. Proposal 3 below is a non-binding, advisory vote regarding the frequency with which we will conduct a shareholder vote on the compensation of our named executive officers.

Our executive compensation program is designed to attract, retain and motivate talented executives capable of providing the leadership, vision and execution necessary to achieve our business objectives and create long-term shareholder value and to ensure that total compensation is fair, reasonable and competitive.

The Compensation Discussion and Analysis section of this proxy statement describes our executive compensation program in more detail. Our executive compensation program consists of three principal components: (i) base salary, (ii) cash bonuses under our annual incentive plan and (iii) long-term equity incentive awards. We believe the base salaries of our named executive officers should generally be set at approximately the fiftieth percentile of the base salaries of executive officers holding similar positions at companies we consider to be in our peer group. We believe cash bonuses paid under our annual incentive plan should: award the named executive officers for business and individual performance; encourage effective short-term

performance while balancing long-term focus; provide a significant portion of total compensation opportunity that is at risk; and be externally competitive and internally equitable. We believe awards granted under our long-term equity incentive plan give our named executive officers a meaningful equity stake in our business and encourage performance by our named executive officers that increases long-term stock holder return. Additionally, we believe awards granted under our long-term equity incentive plan serve as an important tool in retaining experienced and skilled executive officers.

See the Compensation Discussion and Analysis section of this proxy statement and the related tables and narrative disclosure for additional information regarding our compensation program for the named executive officers.

In accordance with Section 14A of the Securities Act of 1934, as amended, the Board of Directors recommends that shareholders approve the following advisory resolution:

RESOLVED, that the shareholders hereby approve the compensation of the company's named executive officers, as disclosed pursuant to the disclosure rules of the Securities and Exchange Commission, including the compensation tables and related narrative discussion in this proxy statement under the caption "Compensation Discussion and Analysis."

This advisory resolution is non-binding. However, our board of directors will consider the voting results for this proposal in making future compensation decisions.

**Required Vote**

The non-binding advisory resolutions will be approved by our shareholders if the votes cast FOR the proposal exceeds the votes cast AGAINST the proposal.

**OUR BOARD OF DIRECTORS UNANIMOUSLY RECOMMENDS THAT YOU VOTE "FOR" APPROVAL OF THE ADVISORY RESOLUTION APPROVING THE COMPENSATION OF OUR NAMED EXECUTIVE OFFICERS.**

29.     However, the Proxy fails to disclose the following material information regarding

Proposal 2:

a.  The Proxy fails to disclose a fair summary of the advice, counsel and analyses performed and provided to the Board and/or the Compensation Committee by Barney & Barney LLC ("Barney"), the Compensation Committee's compensation consultant;

b.  While the Proxy discloses the comparable companies observed in the peer group used by the Compensation Committee, it fails to disclose any compensation data for the named executive officers of the peer companies, including even the median, mean, and range for the peer group data set;

c.  Although the Proxy discloses that Barney provided specific recommendations to the Compensation Committee on how to structure the compensation levels of senior management and how to provide a competitive compensation opportunity designed to align the interests of senior management with those of the shareholders, the Proxy fails to disclose the recommendations made by Barney and any information regarding how the Compensation Committee acted upon the recommendations;

d.  While the Proxy discloses that Barney responded to miscellaneous Compensation Committee requests, including requests for analysis and trends in incentive pay design, it fails to disclose adequate information regarding the nature of those requests and the responses, counsel and analyses performed by Barney in response to the requests;

e.  The Proxy fails to disclose the reason the Board's Compensation Committee believes that the base salaries of the named executive officers ("NEOs") should be set at approximately the 50th percentile of the base salaries of persons in reasonably similar positions at the companies within its peer group;

f.  Although the Proxy discloses that CEO and named executive officer ("NEO") base salaries should generally be set at approximately the 50th percentile of the base salaries for persons in similar positions at the peer group companies and discloses that the former Chief Financial Officer's salary was increased to reach such 50th percentile, it fails to disclose how the other NEO (other than the CEO) base salaries compare to those of persons in similar positions at peer group companies;

g.  The Proxy fails to disclose the criteria the Board and/or the Compensation Committee used in selecting Barney as its compensation consultant; and

h.  The Proxy fails to disclose the amount of fees that the Company has paid Barney in connection with its executive compensation services for the Company, as well as the insurance services it provides to the Company.

30.    Plaintiff and the Class will suffer irreparable damage unless Defendants are enjoined from continuing to breach their fiduciary duties by carrying out the Shareholder Vote on Proposal 2 and without fully and accurately disclosing all information concerning this Proposal.

### FIRST CAUSE OF ACTION
**(Claims for Breaches of Fiduciary Duties Against the Individual Defendants)**

31.    Plaintiff repeats and realleges each allegation set forth herein.

32.    The Individual Defendants have violated fiduciary duties of care, loyalty, candor and good faith owed to the public shareholders of LifeVantage, and have acted to potentially put their personal interests ahead of the interests of LifeVantage shareholders.

33.    By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to dilute the holdings of Plaintiff and other members of the Class in LifeVantage common stock without proper disclosure of the full impact of the dilution.

34.    Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding Proposal 2.

35.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

36.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury if they are forced to vote on Proposal 2 without adequate information regarding its effects.

37.     Plaintiff and the members of the Class have no adequate remedy at law.

### SECOND CAUSE OF ACTION
### (Claim Against LifeVantage for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duties)

38.     Plaintiff repeats and realleges each allegation set forth herein.

39.     LifeVantage has acted and is acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to LifeVantage's public shareholders, and has participated in such breaches of fiduciary duties by allowing the issuance of a materially misleading and incomplete Proxy.

40.     LifeVantage knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, LifeVantage rendered substantial assistance in order to effectuate the Individual Defendants' plan to seek approval of Proposal 2 in the Proxy in breach of their fiduciary duties.

41.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;

B.     Declaring and decreeing that the Proxy was issued in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful;

C.     Declaring that the Company aided and abetted the Individual Defendants in connection with the issuance of a materially misleading and incomplete Proxy;

D.     Enjoining Defendants from consummating the Shareholder Vote on Proposal 2until the Company provides adequate disclosure regarding the proposal to LifeVantage's shareholders.

E.     Awarding Plaintiff and the Class appropriate damages;

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees;

G.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED this _22nd_ day of October, 2012.

ROBINSON, SEILER & ANDERSON, LC

JARED L. ANDERSON
MORGAN FIFE
*Attorney for Plaintiff*